Syllabus.

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## ZEIGLER LYNCH V. COMMONWEALTH.

### November 17, 1921.

1. PROHIBITION ACT—*Offer to Sell—Ability to Perform.*—The ability, at the time an offer to sell ardent spirits is made, to complete the sale in accordance with the offer, is not an essential element of the statutory offense (section 3 of the prohibition act, Acts 1918, p. 578) of offering ardent spirits for sale.

2. PROHIBITION ACT—*Offer to Sell Ardent Spirits—Offer a Mere Joke —Case at Bar.*—To constitute the offense of offering for sale ardent spirits under section 3 of the prohibition act (Acts 1918, p. 578) the offer must have been, at least apparently, an actual offer to sell the spirits, and not a joke. Abstractly speaking, an offer to do something may be so utterly impossible of performance that it cannot reasonably be taken seriously and relied on as an actual offer. However, an offer to sell fifty gallons of whiskey is not *per se* of that character. And, in the instant case, the verdict of the jury, under the instruction given, concluded against the accused the fact that the offer in question was an actual offer, intended by him as such, and not as a joke.

3. SALES—*Existence of Thing Sold—Sale Distinguished From Executory Contract of Sale.*—The actual or potential existence of the thing sold is an essential element of a sale. But that is true only at law, and then only of completed sales, and not of an executory contract to sell.

4. PROHIBITION ACT—*Offer to Sell Ardent Spirits.*—An actual offer to sell is an overt act, which is merely the first action taken in the attempt to make an executory contract of sale, or a sale, and it is the first overt act which the statute (section 3 of the prohibition act, Acts 1918, p. 578) creates into an offense. It is not alone the actual completed sale of ardent spirits which falls within the condemnation of the statute. It also forbids the taking even of the first steps towards the making of the sale, and in the instant case the verbal offer to sell.

5. WORDS AND PHRASES—*"Offer"—"Attempt."*—The word "offer" may have the meaning of "attempt," but it is also defined to mean "to present in words; to proffer; to make a proposal to."

Error to a judgment of the Corporation Court of the city of Radford.

*Affirmed.*

In this case there was a trial by jury and a verdict finding the accused guilty of offering ardent spirits for sale, contrary to the statute (sec. 3 of the prohibition act of 1918, Acts 1918, p. 578), and fixing the punishment of the accused in accordance with another section of the same act. Whereupon the accused moved the court to set aside the verdict as contrary to the law and the evidence. This motion the court overruled, entered judgment, and sentenced the accused in accordance with the verdict of the jury.

The sole assignment of error is that the court erred in refusing to set aside the verdict of the jury as contrary to the law and the evidence; the position taken in argument for the accused being that the verdict is not supported by the evidence, because the evidence does not show that the accused, at the time he offered the whiskey for sale, had the ability to complete the sale in accordance with his offer.

The evidence for the Commonwealth consists of the testimony of two witnesses, one of whom testified that he overheard the accused talking to one C. J. Dudley, when the two were in a certain garage together, and that the "accused offered to sell Dudley fifty gallons of whiskey if he wanted that much"; and the other testified as follows: "I am connected with the ―――― garage. * * * accused came to the garage on Sunday. * * * I had C. J. Dudley working for me. I was sitting in the office and heard loud talking and swearing, * * * heard * * * (the) accused offer to sell Dudley whiskey; he (the accused) said, 'I will sell you (Dudley) as much as fifty gallons if you want that much, and bring it to you any time you want it.' I did not infer that he (the accused) had any at that time; said he would get it for him."

The accused testified that he did not offer to sell any whiskey. That if he offered to sell Dudley any whiskey he was joking, as he (the accused) did not have any whiskey at the time and did not know where he could get any.

The case was submitted to the jury upon a single instruction asked for by the accused which, in substance, submitted to the jury for their decision the question of whether or not they believed from the evidence that the Commonwealth had proved beyond a reasonable doubt that the accused made the offer to sell as much as fifty gallons of whiskey and did so, not as a joke, but with the intention "to carry out" such offer.

*Harless & Calhoun*, for the plaintiff in error.

*John R. Saunders, Attorney-General; J. D. Hank, Jr., Assistant Attorney-General*, and *Leon M. Bazile, Second Assistant Attorney-General*, for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The sole question presented for our decision by the assignment of error in this case is as follows:

[1] 1. Is the ability, at the time an offer to sell ardent spirits is made, to complete the sale in accordance with the offer, an essential element of the statutory offense of offering ardent spirits for sale?

The question must be answered in the negative.

It is elementary that an actual offer to sell anything is in itself an implied representation on the part of the person making the offer that he either has at the time, or undertakes to subsequently acquire, the ability to complete the sale in accordance with the offer. The offer to sell, therefore, is complete the moment it is made, and in no way depends for its existence upon the present or future ability of the person making the offer to complete the sale in accordance with the offer. The actual lack of such ability does not afford any ground of defense to the person making the offer in a prosecution under the statute aforesaid, any

more than it would in a civil action against him for damages for deceit, or for breach of contract, by one who may have accepted the offer in reliance upon the implied representation or undertaking aforesaid. In neither case would the lack of such ability to complete the sale alter the fact that the offer to sell was made. An offer to sell is one thing. A completed sale is another and different thing.

[2] Of course, to constitute the offense, the offer must have been, at least apparently, an actual offer to sell the whiskey, and not a joke. Abstractly speaking, an offer to do something may be so utterly impossible of performance that it cannot reasonably be taken seriously and relied on as an actual offer. We cannot say, however, that the offer to sell fifty gallons of whiskey is *per se* of that character. And the verdict of the jury, under the instruction given, concluded against the accused the fact that the offer in question was an actual offer, intended by him as such, and not as a joke.

[3, 4] As laid down in the authorities cited for the accused (23 R. C. L., sec. 61, pp. 1243-4, and *First Nat. Bank* v. *Turnbull,* 73 Va. [32 Gratt.] 695, 34 Am. Rep. 791), the actual or potential existence of the thing sold is an essential element of a sale. But that is true only at law, and then only of a completed sale. As held in the case just cited, a valid equitable assignment may be made of things not in actual or potential existence at the time of the assignment; and, as stated in the section of R. C. L. just mentioned, while "a mere possibility or contingency not founded on a right or coupled with an interest cannot be the subject of *a present sale,* * * * it may often be of *an executory contract to sell."* (Italics supplied.) An actual offer to sell is an overt act (in the instant case a verbal act), which is merely the first action taken in the attempt to make an executory contract of sale or a sale, and which, unless frustrated by unexpected extraneous circumstances, will result

either in an executory contract of sale or in a sale. It is this first overt act which the statute creates into an offense. The language of the statute, so far as material to be quoted here, is as follows: "It shall be unlawful for any person in this State to sell  *  *  *  or  *  *  *  offer  *  *  * for sale  *  *  *  ardent spirits  *  *  *." It is not alone the actual completed sale of ardent spirits which falls within the condemnation of the statute. It also forbids the taking even of the first step towards the making of the sale.

[5] It is true that the word "offer" may have the meaning of "attempt." It is so stated by Webster. But that authority also defines the word "offer" to mean "to present in words; to proffer; to make a proposal to," giving as an example a quotation from 2 Samuel xxiv 12: "I offer thee. three things." See, to same effect, 3 Bou. Law Dictionary (3rd ed.), p. 2399. So that it is plain that the offer condemned by the statute may consist in the verbal offer which was made in the instant case according to the testimony for the Commonwealth. Therefore, although there was a conflict in the testimony on the subject, that conflict involved the credibility of the witnesses, and since, in the conflicting testimony, there was testimony before the jury sufficient to support their finding to that effect, we must consider that the accused did commit the overt act of making the "proffer," the "proposal," the "offer," and, in that sense, the "attempt" to sell the ardent spirits, which, as aforesaid, is the offense created by the statute.

Such an "attempt" falls precisely within the definition of an attempt given in *Hicks' Case*, 86 Va. 223, 9 S. E. 1024, 19 Am. St. Rep. 891 (a prosecution for an attempt to poison), relied on in argument for the accused. The following is said in that case of an attempt, quoted from Wharton's Cr. Law (9th ed.) : "An attempt is an intended apparent unfinished crime. Therefore, the act must reach far enough towards the accomplishment of the desired result to amount

to the commencement of the consummation." And again, quoting from Wharton's Cr. Law, sec. 181: "To make the act an indictable attempt it must be a cause as distinguished from a condition. And it must go so far that it must result in the crime unless frustrated by extraneous circumstances."

In Wharton's Cr. Law (11th ed.), sec. 224, it is said that an attempt, to be indictable and punishable, "need not be capable of success, * * * it being clear that apparent adaptation may constitute the attempt. * * * It is enough if there is a possibility * * *."

*Berkeley's Case*, 88 Va. 1017, 14 S. E. 916, also relied on in argument for the accused, was a prosecution for an assault. It is true that the opinion of the court in that case quotes with approval extracts from Davis Cr. Law and Russell on Crimes, in which the statement is made that "to constitute an assault, there must be present ability to inflict an injury," yet, as indicated in the very extracts quoted, this statement is subject to the qualification that if the threatened conduct is such that it puts the person assailed in such apparent peril as to create in him the reasonable belief that he is in peril, the assault will be complete, although it may be that the person making the assault did not in truth have the present ability to inflict the threatened injury. As said in Bish. New Cr. Law (8th ed.), sec. 32, on the subject of what constitutes an assault: "There is no need for the party assailed to be put in actual peril, if only a well-founded apprehension is created. For his suffering is the same in the one case as in the other, and the breach of the public peace is the same. To illustrate: * * * If, within shooting distance, one menacingly points at another with a gun, apparently loaded, yet not in fact, he commits an assault the same as if it were loaded." Thereupon, Mr. Bishop proceeds to lay down what is undoubtedly the correct rule on the subject, in the following words: "There must be some power, actual or apparent, of doing bodily

harm; but apparent power is sufficient. In the instance we are referring to, the person assaulted is really put in fear. * * * It has been said that the gun must be within shooting distance; but plainly if it is not, yet seems to be so to the person assaulted, or danger otherwise appears imminent, it will be sufficient."

It appears from the opinion in *Berkeley's Case* that the prosecutor himself testified that the accused "did not attempt to strike" him. Hence, it affirmatively appeared that the prosecutor was never put in any apparent peril or apprehension of bodily harm. And the court correctly held, under those circumstances, that the charge of the assault was not sustained by the evidence. Plainly, therefore, the case does not hold, as is claimed for the accused in the case before us, that, to constitute an attempt, the overt act must, in all cases, be accompanied with the present ability on the part of the actor to accomplish the actual thing attempted. And we find nothing in the holding in *Berkley's Case* in conflict with our conclusions reached above.

The case will, therefore, be affirmed.

*Affirmed.*