Richmond

KEITH LAMONT CURTIS

v.

COMMONWEALTH OF VIRGINIA

No. 1000-89-2

Decided February 11, 1992

Counsel

Donald E. Hines (Traylor & Morris, on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

## ON REHEARING EN BANC

Opinion

WILLIS, J.—Keith Lamont Curtis appeals his conviction for the attempted capital murder of Dominica Harris in the commission of or subsequent to rape. Curtis had been convicted previously in Richmond for one of the two rapes that served as predicates for the attempted capital murder charge. The issue on appeal is whether proof of the Richmond rape to support the prosecution for attempted capital murder is barred under principles of double

jeopardy. We hold that his conviction in Richmond for the rape that occurred there did not bar proof of that rape as a predicate offense in his prosecution in Chesterfield County for attempted capital murder. We affirm the judgment of the trial court.

On September 9, 1988, Curtis raped Dominica Harris in his apartment in the City of Richmond. He transported Ms. Harris to a location in Chesterfield County where he raped her a second time. He then struck her several times with a jack, cut her throat, and left her on the side of the road. Her jugular vein was severed, a potentially fatal wound.

Curtis was convicted in the Circuit Court of the City of Richmond of raping Ms. Harris. Subsequently, in April 1990, he was tried in the Circuit Court of Chesterfield County on indictments charging that on September 9, 1988, in the County of Chesterfield, he did: (1) maliciously wound Dominica Harris; (2) rape Dominica Harris; and (3) attempt to kill Dominica Harris in the commission of or subsequent to rape.

In the Chesterfield trial, without objection, Ms. Harris testified concerning the Richmond rape. However, in arguing the jury instructions, Curtis objected on double jeopardy grounds to proof of the Richmond rape to support the attempted capital murder charge. The trial court overruled this objection, holding that the Chesterfield jury could consider the Richmond rape as a predicate for the attempted capital murder in Chesterfield County.

The jury was given the following verdict form:

We the jury find the defendant guilty of attempted capital murder of Dominica Harris in the commission of or subsequent to rape(s) that occurred in (choose one):

_____ Chesterfield
_____ Richmond
_____ Both Chesterfield and Richmond

and fix his punishment at:

_____

_____

_____
Foreman

The jury returned the following verdict:

We the jury find the defendant guilty of attempted capital murder of Dominica Harris in the commission of or subsequent to rape that occurred in both Chesterfield and Richmond and fix his punishment at life in prison.

<u>[Signed by Foreman]</u>
Foreman

The defendant was also convicted of the Chesterfield rape. The malicious wounding charge was dismissed on motion of the Commonwealth's attorney.

On appeal, Curtis asserts that proof of the Richmond rape as a predicate for the attempted capital murder charge was barred by the prohibition against double jeopardy. Relying on *Grady v. Corbin*, 110 S. Ct. 2084 (1990), he argues that the trial judge erred in permitting the jury to consider the Richmond rape, for which he had previously been convicted, as an element of attempted capital murder. The Commonwealth contends that consideration of this issue is barred by Rules 5A:18 and 3A:9(b)(1) and that the case at bar presents a situation significantly different from that in *Grady* because two jurisdictions are involved.

As a preliminary matter, the Commonwealth asserts that the double jeopardy claim is barred because it was not raised until after the Commonwealth's case-in-chief, in violation of Rules 5A:18 and 3A:9(b)(1). However, we find that the issue was timely raised notwithstanding Curtis's failure to object at the time the evidence of the Richmond rape was admitted. On appeal, Curtis does not object to the admission of the evidence concerning the Richmond rape. Indeed, he could not be heard to complain of its admission. While evidence of other crimes is generally inadmissible due to its prejudicial nature, it is admissible "in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial." *Tomlinson v. Commonwealth*, 8 Va. App. 218, 224, 380 S.E.2d 26, 30 (1989). As the Supreme Court has recently reaffirmed, the presentation of specific evidence in one trial does not bar forever the introduction of that evidence in a subsequent proceeding. *Dowling v. United States*, 493 U.S. 342 (1990). Evidence of the Richmond rape was admissible to

show motive and intent. The Richmond rape was connected with and led up to the offenses on trial.

Curtis's argument addresses the use of the Richmond rape as a predicate for the attempted capital murder charge when he had previously been convicted of that rape. The indictment in Chesterfield County did not mention the Richmond rape. Therefore, Curtis could not have known that the Commonwealth would seek to use the Richmond rape as a predicate for the attempted capital murder charge until the proposed jury instructions were examined. At that time, he promptly objected. Thus, this issue was presented timely to the trial court and may be raised on appeal.

In *Grady*, the Supreme Court "clarified the standard for determining whether successive prosecutions are barred by the double jeopardy clause of the fifth amendment." *Low v. Commonwealth*, 11 Va. App. 48, 51, 396 S.E.2d 383, 385 (1990). In *Grady*, Corbin's automobile struck oncoming vehicles, killing one person and injuring another. That same evening, he was served with traffic tickets charging him with the misdemeanors of driving while intoxicated and failing to keep to the right of the median. 110 S. Ct. at 2087-88.

Corbin pled guilty to these two misdemeanors. *Id.* at 2088. He subsequently was indicted for reckless manslaughter, second-degree vehicular manslaughter, criminally negligent homicide, third degree reckless assault, and driving while intoxicated, all based on the same incident which had given rise to the misdemeanor charges. *Id.* at 2089. The prosecution filed a bill of particulars identifying the three reckless or negligent acts "on which it would rely to prove the homicide and assault charges: (1) operating a motor vehicle on a public highway in an intoxicated condition, (2) failing to keep right of the median, and (3) driving approximately 45 to 50 miles per hour in heavy rain." *Id.*

In making its double jeopardy analysis, the Supreme Court first applied the traditional *Blockburger* test.[1] "If application of

---

[1] The *Blockburger* test is stated as follows:
> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304 (1932).

that test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease, and the subsequent prosecution is barred." *Grady*, 110 S. Ct. at 2090. Corbin conceded that *Blockburger* did not bar prosecution for reckless manslaughter, criminally negligent homicide, and third degree reckless assault.

However, the Court did not end its inquiry at this point. The Court explained:

The *Blockburger* test was developed "in the context of multiple punishments imposed in a single prosecution." In that context, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." The *Blockburger* test is simply a "rule of statutory construction," a guide to determining whether the legislature intended multiple punishments.

Successive prosecutions, however, whether following acquittals or convictions, raise concerns that extend beyond merely the possibility of an enhanced sentence.

*Grady*, 110 S. Ct. at 2090-91 (citations omitted).

■ The Court noted that multiple prosecutions give the state an opportunity to rehearse the presentation of evidence and place an additional burden on the defendant by requiring him to face each of the charges in a separate proceeding. *Id.* at 2091-92. It held that, as suggested in *Illinois v. Vitale*, 447 U.S. 410 (1980), even though *Blockburger* would allow a successive prosecution, the reviewing court must determine whether, in the later prosecution, "the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady*, 110 S. Ct. at 2093.

Applying this standard, the Court found that the second prosecution was barred. By its own pleadings, the state admitted that in the second trial it would prove the entirety of the conduct for which Corbin had already been convicted, driving while intoxicated and failing to keep to the right of the median. Therefore, the subsequent prosecution was barred. *Id.* at 2094.

Several Virginia cases have addressed the application of double jeopardy principles to convictions for capital murder and the underlying felonies of rape and robbery. These cases have relied on decisions holding that the *Blockburger* test does not apply to multiple convictions in a single trial when the legislature clearly intends to impose multiple punishments for a single transaction. *See Turner v. Commonwealth*, 221 Va. 513, 530, 273 S.E.2d 36, 47 (1980), *cert. denied*, 451 U.S. 1011 (1981). This Court has stated that "the General Assembly clearly intended to authorize separate and cumulative punishments for capital murder and the underlying felonies of robbery and rape when such convictions were obtained in a single trial." *Peterson v. Bass*, 2 Va. App. 314, 320, 343 S.E.2d 475, 479 (1986), *cert. denied*, 484 U.S. 933 (1987). However, unlike the appellants in *Peterson* and in *Fitzgerald v. Commonwealth*, 223 Va. 615, 292 S.E.2d 798 (1982), Curtis was subjected to successive prosecutions and his convictions were not obtained in a single trial. As a result, the inquiry cannot end with a consideration of *Blockburger*.

By utilizing the Richmond rape as a predicate offense for the attempted capital murder prosecution in Chesterfield, the Commonwealth undertook to prove that rape, conduct for which Curtis had already been prosecuted, to establish an essential element of the offense on trial. Thus, the holding of *Grady* would appear to control the decision in this case. However, a "jurisdictional exception" has for many years been recognized as a limitation on the application of the double jeopardy rule. In *United States v. Ball*, 163 U.S. 662 (1896), the United States Supreme Court recognized that a prior proceeding in a court lacking jurisdiction over the matter does not bar a subsequent proceeding "in a court which has jurisdiction of the offence." *Id.* at 669. *See also Grafton v. United States*, 206 U.S. 333, 345 (1907); *Diaz v. United States*, 223 U.S. 442 (1912).

[J]eopardy cannot extend to an offense beyond the jurisdiction of the court in which the accused is tried.

*State v. Manzanares*, 674 P.2d 511, 512 (N.M. 1983), *cert. denied*, 471 U.S. 1057 (1985). *See State v. Padilla*, 678 P.2d 686 (N.M. 1984), *aff'd sub nom. Fugate v. New Mexico*, 470 U.S. 904 (1985); *see also People v. Page*, 196 Ill. App. 3d 285, 553 N.E.2d 753 (1990).

In his concurring opinion in *Ashe v. Swenson*, 397 U.S. 436 (1970), Justice Brennan, the author of the majority opinion in *Grady v. Corbin*, describing the applicability of the Double Jeopardy Clause, noted, "[An] exception would be necessary if no single court had jurisdiction of all the alleged crimes." *Id.* at 453 n.7 (Brennan, J., concurring).

■ The purpose of the double jeopardy rule, as enunciated in *Grady*, is to prevent the state from using its resources to rehearse its evidence and to impose upon the accused the burden of defending successive prosecutions. That rule is not invoked where the several crimes involved are not amenable to common jurisdiction.

■ The circuit courts of the Commonwealth are invested with jurisdiction to try criminal charges. Code § 17-23. *See Garza v. Commonwealth*, 228 Va. 559, 565-66, 323 S.E.2d 127, 130-31 (1984). That jurisdiction is limited to the trial of all presentments, indictments and informations for offenses committed within their respective circuits. *See* Code § 19.2-239. Thus, charges may be tried only in the circuit courts having territorial jurisdiction over the locations in which the crimes occurred and in which venue is laid. *See Howell v. Commonwealth*, 187 Va. 34, 40-41, 46 S.E.2d 37, 40-41 (1948); *Karnes v. Commonwealth*, 125 Va. 758, 762, 99 S.E. 562, 563 (1919). The indictment charging the Richmond rape could be tried only in the Circuit Court of the City of Richmond. The indictment charging the attempted capital murder in Chesterfield could be tried only in the Circuit Court of Chesterfield County. No court had common jurisdiction over both charges. Thus, the jurisdictional exception applies to this case. Since the Circuit Court of the City of Richmond was without jurisdiction to try the charge of attempted capital murder, Curtis was not put in jeopardy with respect to that charge when he was tried for rape in Richmond. Jeopardy with respect to that charge attached, first and solely, upon his trial in Chesterfield.

The judgment of the trial court is affirmed.

*Affirmed.*

Koontz, C.J., Baker, J., Barrow, J., Benton, J., Coleman, J., Duff, J., Moon, J., Elder, J., and Bray, J., concurred.