COURT OF APPEALS OF VIRGINIA

Present: Judges Fitzpatrick, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


DONNA FOSTER-ZAHID
                                         OPINION BY
v.        Record No. 1937-95-4    JUDGE JOHANNA L. FITZPATRICK
                                         NOVEMBER 12, 1996
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    J. Howe Brown, Judge

          (William D. Pickett, on briefs), for
          appellant.  Appellant submitting on briefs.

          Marla Graff Decker, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief) for appellee.


     Donna Foster-Zahid (appellant) was convicted in a bench

trial of custodial interference (felony parental abduction) in

violation of Code § 18.2-49.1(A).[1]  On appeal, appellant contends

that the trial court erred in:  (1) exercising jurisdiction

because the abduction was accomplished outside of Virginia, and

(2) finding Fairfax, Virginia to be the appropriate venue.  For

the reasons that follow, we affirm the trial court.
_____

     [1]Code § 18.2-49.1(A) provides that "[a]ny person who knowingly,

wrongfully and intentionally withholds a child from the child's

custodial parent in a clear and significant violation of a court

order respecting the custody or visitation of such child, provided

such child is withheld outside of the Commonwealth, shall be

guilty of a Class 6 felony."  (Emphasis added).

## I.  BACKGROUND

The facts are uncontested.  Mr. Zahid and appellant were married in December 1983.  Their son, Raja Zahid Jr., was born December 1986.  After they separated, custody of Raja Jr. was determined in an October 19, 1994 hearing in the Fairfax Juvenile and Domestic Relations District Court in which both parties were represented by counsel.  In a November 9, 1994 order, the judge ordered joint legal and physical custody of Raja Jr. and specified as follows:

> The child shall be released to his father's physical custody on Saturday, October 22, 1994 at 11:00 AM and shall continue to be in his father's physical custody except for periods of visitation with his mother, as herein outlined, until the second semester begins in the child's Wisconsin school. . . .
>
> After this Fall 1994–1995 semester, Raja will live with his mother during the school term each year and his father during the summer school vacation . . . .
>
> \*    \*    \*    \*    \*    \*    \*
>
> The father shall take or send the child to visit the mother in Wisconsin December 2nd through 4th, 1994.  The mother shall have the child with her and is to arrange transportation, etc. for a holiday visit from the day school is out in Virginia through December 29th at 10:00 PM, when she is to return Raja to the father in Virginia.

Mr. Zahid took his son to Wisconsin for appellant's fall visitation on December 2, 1994 and left two plane tickets with appellant so that she could return the child on December 4, 1994

2

as required by the court order. Appellant failed to return the child to his father. She informed Mr. Zahid that she would not return Raja Jr. because he had an ear infection and she did not want him to travel by air. She later agreed to bring Raja Jr. back by train. Relying on this representation, Mr. Zahid purchased two train tickets for the return trip. Appellant again refused to relinquish the child. Appellant then agreed to deliver the child to Mr. Zahid if the transfer occurred at the Amtrak Station in Milwaukee, Wisconsin on December 9, 1994. Mr. Zahid travelled to Wisconsin, waited for Raja Jr. and appellant at the station, but they never appeared.

On December 14, 1994, a Wisconsin court enforced the Virginia decree and required appellant to "forthwith and without delay place the child Raja E. Zahid into the actual and physical custody and control of Raja M. Zahid."[2] Rather than comply, appellant absconded with the child to California on December 24, 1994, and then to Colorado four days later. In March 1995, appellant was arrested in Colorado for the abduction of Raja Jr., and returned to Fairfax, Virginia for trial.

---

[2]Appellant admitted her awareness of the Virginia court order, but attempted to justify withholding Raja Jr. from Mr. Zahid. She alleged that Mr. Zahid slapped her face on December 2, 1994, and told her that she would never see her son again because he planned to take the child to his native country of Pakistan.

## II.  JURISDICTION

At the close of the Commonwealth's case, appellant moved to strike the evidence and argued <u>inter</u> <u>alia</u> that neither jurisdiction nor venue was properly laid in Fairfax, Virginia, because the place of the child's abduction was Wisconsin.  The trial court denied the motion to strike and stated as follows:

> The gravamen of [18.2-49.1] is not taking a child.  I don't think the statute even uses the word taking a child or abduction.  It says withholding a child. Withholding the child from the child's custodial parent.  And the withholding is where the child's supposed to be and if the child is supposed to be here, this is where the offense occurs.
>
>     *     *     *     *     *     *     *
>
> [What makes 18.2-49.1 a felony] is that the child is withheld <u>outside</u> the Commnwealth.  But the Commnwealth is where the child was supposed to be and that's the gravamen of the offense.  Both jurisdiction and venue are here because this is where the parent lived.

(Emphasis added).

At the close of all the evidence, the court denied the renewed motion to strike by appellant's counsel and additionally found as follows:

> I didn't hear any reason why [appellant] went to California or Colorado except to withhold the child . . . in violation of the [c]ourt [o]rder. She violated not one, but two [o]rders.  There was an [o]rder in Virginia and there was one in Wisconsin.  The Wisconsin [o]rder was issued after the events that she says occurred, that she says gave her reason to fear that her husband would take the child to Pakistan had occurred.  So,

4

whatever those issues were could and should have been raised in the Wisconsin hearing.

[S]he got an [o]rder from Wisconsin saying take the child back -- give the child back, and she violated that [o]rder as well as the Virginia [o]rder. She knew of the two [o]rders. She intentionally withheld the child without legal excuse. So, it was wrongful.

The violation of the [c]ourt [o]rders was clear and significant. This is the very type of behavior that the statute is designed to prevent. There may be a whole lot of social policy reasons why this ought not to be a felony, but I don't do social policy; I do law. And she violated the law and I find her guilty.

Appellant argues that the trial court lacked jurisdiction to try her for a violation of Code § 18.2-49.1(A) because her act of withholding the child occurred outside the confines of the Commonwealth. Appellant contends that the locus of where the child is "with[held] from the child's custodial parent," rather than where the custody order was entered, controls jurisdiction. The clear language of the statute contradicts this view.

**(A)  Parental Abduction / Custodial Interference Statute**

"A primary rule of statutory construction is that courts must look first to the language of the statute. If a statute is clear and unambiguous, a court will give the statute its plain meaning." Loudoun County Dep't of Social Servs. v. Etzold, 245 Va. 80, 85, 425 S.E.2d 800, 802 (1993). The General Assembly specified that Code § 18.2-49.1(A) applies to any person who withholds a child outside of Virginia from the child's custodial

5

parent in violation of a Virginia court order, if the custodial parent resides in Virginia. The statutory language demonstrates the General Assembly's intent to make criminal an act occurring outside of Virginia that causes harm within.

Subsections A and B of Code § 18.2-49.1, although similar in language, are different in effect. The legislature outlined two degrees of custodial interference. The degree of offense is determined by the location of the detention or abduction. If it occurs within the territorial boundaries of the Commonwealth, under subsection B, it is a misdemeanor. The act that elevates the offense from a misdemeanor to a felony occurs only when the child is "withheld" from a custodial parent "outside of the Commonwealth." Code § 18.2-49.1(A) (emphasis added). The gravamen of the offense is the withholding of the child from the custodial parent outside the Commonwealth. The clear intent of the statute is to punish more severely those who withhold a child from its rightful custodian when the detention is accomplished outside of Virginia, thereby further restricting the custodial parent's ability to retrieve the child. The underlying policy for this statute, like that of the Parental Kidnapping Prevention Act, 28 U.S.C.A. § 1738A, is to deter, if not prevent, child snatching.

While we have not previously addressed this precise issue, other jurisdictions with similar statutes hold that the custodial parent's residence and the place of issuance of the custody

6

decree provide a sufficient jurisdictional nexus regardless of where the actual abduction or detention occurs.[3]

In Vermont, the child custody interference statute provides

---

[3] See N.J. Stat. Ann. § 2C:13-4 (West 1995) (a person, "including a parent . . . is guilty of interference with custody if . . . [a]fter the issuance of a temporary or final order specifying custody, visitation or joint custody rights, takes, detains, entices or conceals a minor child from the other parent in violation of the custody or visitation order"); Cal. Penal Code § 784.5 (West 1995) (providing jurisdiction to prosecute violator in jurisdictional territory where (1) victim resides; (2) minor child was taken, detained, or concealed; or (3) minor child is found); N.D. Cent. Code § 14-14-22.1 (1995) (removal or detention of "child under the age of eighteen years outside North Dakota with the intent to deny another person's rights under an existing custody decree shall be guilty of a class C felony"); see also R.I. Gen. Laws § 11-26-1.2 (1994); Wyo. Stat. § 6-2-204 (1989); S.D. Codified Laws Ann. § 22-19-9 (1985); Nev. Rev. Stat. § 200.359 (1995); La. Rev. Stat. Ann. § 45.1 (West 1986); Ill. Ann. Stat. ch. 720, para. 5/10-5 (1989); Idaho Code § 18-4506 (1987); Ga. Code Ann. § 16-5-45 (Harrison 1987); Fla. Stat. Ann. § 787.03 (West 1996); Colo. Rev. Stat. Ann. § 18-3-304 (West 1990); Ariz. Rev. Stat. Ann. § 13-1302 (1994); and Ind. Code § 35-42-3 (1990).

in pertinent part, "[a] person commits custodial interference by taking, enticing or keeping a child from the child's lawful custodian." Vt. Stat. Ann. tit. 13, § 2451(a) (1995) (emphasis added). The Supreme Court of Vermont, in a factually similar case, construed the statute to "explicitly contemplate[] application to a person who has kept a child outside of Vermont." The court specifically rejected defendant's argument that the statute "refers only to those who 'snatch' a child in Vermont and then leave the state to avoid detection," and found that "[t]he only plausible interpretation of [the statutory] language is that the statute is intended to apply to a person . . . who keeps a child outside Vermont when the child's lawful custodian is a resident of Vermont." State v. Doyden, 676 A.2d 345, 346 (Vt. 1996) (emphasis added). The court found further grounds for jurisdiction because the result of defendant's conduct (i.e., the custodial parent losing custody) was "not incidental to the offense charged, but [was] in fact an element of the offense as defined by statute." Id. at 348.

In construing the Alaska statute addressing custodial interference, the Court of Appeals of Alaska stated, "[t]he crime of custodial interference was designed to protect any custodian from deprivation of his or her custody rights." Strother v. State, 891 P.2d 214, 220 (Alaska Ct. App. 1995). "Alaska's custodial interference statutes embody the rule that, when a child is entrusted to joint custodians, neither custodian may

8

take exclusive physical custody of the child in a manner that defeats the rights of the other joint custodian."  Id. at 223. The Alaska statute uses the phrase "takes, entices, or keeps [a] child . . . from a lawful custodian" to describe the prohibited act.  The court further held that "if a parent takes custody of the child and exercises that custody in a manner that defeats the custody rights of the other parent, unlawfully 'keeping' the child from the other parent, then the parent's conduct constitutes the actus reus of custodial interference."[4]  Id. at

---

[4]See also State v. Kane, 625 A.2d 1361 (R.I. 1993) (Rhode Island maintained jurisdiction over defendant who intentionally retained child outside of state in violation of state custody decree, stating, "the crime of child snatching can never occur absent a valid custody order rendered within this state.  Thus [the statute] applies to acts that necessarily produce a detrimental effect within Rhode Island."); State v. Doyle, 828 P.2d 1316 (Idaho 1992) (where defendant, mother, or child were not present in state when the act of withholding occurred, Idaho will have jurisdiction over a crime if any essential element of the crime, including the result, occurs within the state -- where the "keeping or withholding and the deprivation of the custodial rights, occurred in Idaho"); Trindle v. State, 602 A.2d 1232 (Md. 1992) (where defendant acquired lawful possession of child and detained child outside Maryland, the intended result of

defendant's conduct, i.e., depriving father of custody, formed an essential ingredient of the offense, and had its effect in state of father's residence, although the acts which produced that result took place out of state); Rios v. State, 733 P.2d 242 (Wyo. 1987) ("the only place where [defendant] could fail or refuse to return the child to the custody of the person entitled to custody is Wyoming," where the adverse result occurred); Wheat v. State, 734 P.2d 1007 (Alaska Ct. App. 1987) (under custodial interference statute, the commission of a crime is consummated in Alaska when crime requires a result as a necessary element, and when result occurs inside the state; the prohibited result is the gravamen of the offense, rather than defendant's proscribed conduct per se; court also noted alternative basis for jurisdiction in defendant's omission to perform a legal duty with respect to relationship to another); People v. Harvey, 435 N.W.2d 456 (Mich. Ct. App. 1989) (defendant's Colorado-based conduct subject to Michigan court's jurisdiction where defendant had legal duty to return daughter to mother, and statute made criminal his failure to perform this duty. "The detrimental effects of defendant's intentional retention of [the child] in violation of the Michigan court's custody order occurred within the state, since it was the authority of a Michigan resident that was infringed upon."); Roberts v. State, 619 S.W.2d 161 (Tx. Crim. App. 1981) (where defendant grandmother knowingly and intentionally retained child

224. We find this analysis equally applicable to the case at bar.

### (B) Extraterritorial Jurisdiction

Code § 19.2-239 defines the jurisdiction of the circuit courts of Virginia in criminal cases and provides that "[t]he circuit courts, except where otherwise provided, shall have exclusive original jurisdiction for the trial of all presentments, indictments and informations for offenses committed within their respective circuits." Generally, charges may be tried only in the circuit courts having territorial jurisdiction over the locations in which the crimes occurred and in which venue is laid." Curtis v. Commonwealth, 13 Va. App. 622, 629, 414 S.E.2d 421, 425 (1992). "[The crime] must take place within this State to give our courts jurisdiction. . . . Every crime to be punished in Virginia must be committed in Virginia." Farewell

out of state, knew that retention violated court order, and where statutory provisions incorporated territorial theory stated in Strassheim v. Daily, Texas had jurisdiction); People v. Caruso, 504 N.E.2d 1339 (Ill. App. Ct. 1987) (defendant's act of harboring children out of state and failing to return them to custodial parent in violation of Illinois court order subjected defendant to prosecution in Illinois pursuant to Illinois criminal jurisdiction statute, where the offense charged was based on "an omission to perform a duty imposed by the law of this State").

v. Commonwealth, 167 Va. 475, 479, 189 S.E. 321, 323 (1937).

While the traditional view of jurisdiction requires a completed intrastate act, the Virginia Supreme Court has addressed the question of jurisdiction to prosecute an offense not fully executed in Virginia but resulting in immediate harm within the Commonwealth.  "[A]ctual physical presence in a state is not necessary to make an individual amenable to its criminal laws if the crime is the 'immediate result' of the accused's act; under such circumstances, the accused may be tried in the state's courts <u>even though actually absent at the time the act was committed</u>."  <u>Moreno v. Baskerville</u>, 249 Va. 16, 19, 452 S.E.2d 653, 655 (1995) (emphasis added) (quoting <u>Travelers Health Ass'n v. Commonwealth</u>, 188 Va. 877, 891, 51 S.E.2d 263, 268 (1949)).  "'It has long been a commonplace of criminal liability that a person may be charged in the place where evil results, though he is <u>beyond the jurisdiction</u> when he starts the train of events of which the evil is the fruit.'"  <u>Gregory v. Commonwealth</u>, 5 Va. App. 89, 94, 360 S.E.2d 858, 861 (1987) (emphasis added) (quoting <u>Travelers Health</u>, 188 Va. at 892, 51 S.E.2d at 269) (Virginia had jurisdiction because the fraudulent disposal of a truck outside Virginia was contemplated by the statute, where the harm the statute intended to prevent occurs in Virginia, regardless of where the fraudulent intent is formed), <u>aff'd</u>, 237 Va. 354, 377 S.E.2d 405 (1989).  "Where harm is caused in Virginia by criminal acts partially committed within this Commonwealth, such acts can

12

be prosecuted here." Id. Jurisdiction may exist where the immediate harm occurs, even if the criminal act does not physically occur there.

Additionally, in defining extraterritorial jurisdiction, the United States Supreme Court held that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if [defendant] had been present at the effect, if the state should succeed in getting him within its power." Strassheim v. Daily, 221 U.S. 280, 285 (1911). See also United States v. Steinberg, 62 F.2d 77, 78 (2d Cir. 1932) (no constitutional violation to charge accused in the United States, where he posted fraudulent letter in Canada).

In the instant case, appellant lawfully obtained custody of the child for a limited visitation pursuant to the November 9, 1994 Virginia court order. Appellant willfully violated the valid court order requiring her "to return Raja to the father in Virginia" by originally withholding the child in Wisconsin and later absconding with him to California and Colorado. Even though appellant's original detention and later removal of the child occurred outside the Commonwealth, the immediate harm of depriving Mr. Zahid of custody of his son occurred within Virginia. Thus, Virginia properly exercised jurisdiction over appellant pursuant to Code §§ 18.2-49.1(A) and 19.2-239.

13

## III. VENUE

Lastly, appellant argues that the trial court also erred in finding that venue was properly laid in Fairfax County, because Code § 19.2-244 does not fix venue at a place other than where the crime occurred, and no crime occurred in Virginia.

"Except as otherwise provided by law, the prosecution of a criminal case shall be had in the county or city in which the offense was committed." Code § 19.2-244. Venue is reviewed to determine "whether the evidence, when viewed in the light most favorable to the Commonwealth, is sufficient to support the [trial court's] venue findings." Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990).

"At common law the proper venue of a crime was the county where it was committed and this rule has been generally recognized by courts or established by Constitutions. But, in the absence of a constitutional limitation, it is generally held that the Legislature has power to fix the venue of criminal prosecutions in a county or district other than that in which the crime was committed." Howell v. Commonwealth, 187 Va. 34, 40-41, 46 S.E.2d 37, 40 (1948) (citation omitted). To prove venue, the Commonwealth must "produce evidence sufficient to give rise to a 'strong presumption' that the offense was committed within the jurisdiction of the court, and this may be accomplished by either direct or circumstantial evidence." Cheng, 240 Va. at 36, 393 S.E.2d at 604 (quoting Pollard v. Commonwealth, 220 Va. 723, 725,

14

261 S.E.2d 328, 330 (1980)).

Under Code § 18.2-49.1(A), the General Assembly clearly provided that venue exists where the crime of custodial interference occurred, i.e., where the harm resulted as a direct and immediate consequence of the violation of the court order.[5] In the instant case, the evidence established that Mr. Zahid was a resident of Fairfax County at the time of the abduction and that the child was to be returned to Fairfax County pursuant to a valid and enforceable Fairfax custody order.  The harm contemplated by Code § 18.2-49.1(A) was clearly established as occurring in this locus.  Thus, the trial court properly found venue in Fairfax, Virginia.

[5]Additionally, in parental abduction or custodial interference cases, other states provide venue where the custodial parent resides.  See, e.g., State v. Evans, 442 S.E.2d 287 (Ga. Ct. App. 1994) (where defendant removed child from state in lawful exercise of visitation right, and upon expiration of the period of lawful visitation intentionally retained the minor in another state for the purpose of keeping the minor away from the individual having lawful custody of minor, the victim's (i.e., the custodial parent's) domicile should be the venue of any criminal prosecution); and State v. Aussie, 845 P.2d 158 (Ariz. Ct. App. 1993) (venue is proper in the county where the custodial parent resided at the time of the custodial interference).

15

For the foregoing reasons, we affirm the decision of the trial court.

<u>Affirmed.</u>