POWELL, J.,
dissenting.
I respectfully dissent from the portion of this opinion affirming Goble’s felony conviction by holding that the “immediate result doctrine” provides Virginia courts with jurisdiction over Goble’s sale of the mounted deer heads stored in Pennsylvania. Under the immediate result doctrine, “a state may exercise jurisdiction over criminal acts that are committed outside the state, but are intended to, and do in fact, produce harm within the state.” Jaynes v. Commonwealth, 276 Va. 443, 452, 666 S.E.2d 303, 307 (2008) (emphasis added). Thus, the immediate result doctrine extends “jurisdiction to prosecute an offense not fully executed in Virginia but resulting in immediate harm within the Commonwealth.” Foster-Zahid v. Commonwealth, 23 Va.App. 430, 440, 477 S.E.2d 759, 764 *159 (1996) (emphasis added); see also Gregory v. Commonwealth, 5 Va.App. 89, 94, 360 S.E.2d 858, 861 (1987) (“Where harm is caused in Virginia by criminal acts partially committed within this Commonwealth, such acts can be prosecuted here.”).
Implicit within the immediate results doctrine is the requirement that the harm the Commonwealth seeks to punish must immediately result from the extraterritorial criminal act or from the chain of events set into motion by the act. See Travelers Health Ass’n v. Commonwealth, 188 Va. 877, 892, 51 S.E.2d 263, 269 (1949) (“ ‘It has long been a commonplace of criminal liability that a person may be charged in the place where the evil results, though he is beyond the jurisdiction when he starts the train of events of which the evil is the fruit.’ ” (quoting Strassheim v. Daily, 221 U.S. 280, 284-85, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911)) (emphasis added)).
The sequence of events is critical to the proper application of the immediate results doctrine. In its various explanations of the immediate results doctrine, our Supreme Court has repeatedly used the example of a shot fired across state lines. See, e.g., id. at 891, 51 S.E.2d at 268 (Adopting the immediate results doctrine in situations “where the accused, while in one state, sets in motion a force which operates in another state, as where a shot is fired at a person across a state line.”); see also Moreno v. Baskerville, 249 Va. 16, 19, 452 S.E.2d 653, 655 (1995) (distinguishing the immediate results doctrine where an intervening act occurred and therefore the facts were “entirely unlike a case in which a shot fired across a state line ‘immediately’ results in harm”). Similarly, in each of the cases cited by the majority, a criminal act was perpetrated which resulted in a harm. None of those cases reflect the facts of this case where the harm sought to be prevented, i.e. violation of Virginia’s interest in protecting its wildlife from illegal taking, occurred before the criminal act that is being prosecuted. See Jaynes, 276 Va. 443, 666 S.E.2d 303 (sending bulk e-mail with false routing information from North Carolina results in illegal use of a Virginia-based e-mail provider’s computer network); Travelers Health Ass’n, 188 Va. at 892, 51 S.E.2d at 269 (selling insurance without the required permits results in *160 economic loss in Virginia); Foster-Zahid, 23 Va.App. at 430, 477 S.E.2d at 759 (child withheld outside Virginia results in harm to relationship with father in Virginia); Gregory, 5 Va.App. at 89, 360 S.E.2d at 858 (illegal conversion of property outside of Virginia results in economic injury in Virginia). All of these cases make it clear that a proper application of the immediate results doctrine is dependent on a criminal act preceding the resulting harm in Virginia. The doctrine does not, by its terms, apply to a set of facts where the harm, which has already occurred, provides the fodder for the subsequent criminal act. Thus, absent a showing of the immediate harm resulting from the criminal act, Virginia does not have jurisdiction.
In the present case, the extraterritorial criminal act was the sale of the mounted deer heads. According to the majority, the harm was “Virginia’s loss ... to its right to control the sale of its natural resources without proof of legitimate possession.” Even if this is the harm sought to be prevented, in reaching this conclusion the majority ignores the fact that the “loss” occurred as soon as the mounted deer heads were removed from the state, and therefore necessarily preceded the extraterritorial act. As nothing in the Code criminalizes the transfer of wild animal parts to another state, I find that the Commonwealth has failed to demonstrate what harm, if any, occurred in Virginia as an immediate result of Goble’s sales of mounted deer heads stored in Pennsylvania. See, e.g., United States v. Dove, 247 F.3d 152, 156 (2001) (recognizing that Code § 29.1-553 “prohibits the sale of [wild animal parts], but not their transportation or possession”).
Furthermore, I believe the majority misidentifies the harm sought to be protected. As it is the duty of the Department to “[e]nforce or cause to be enforced all laws for the protection, propagation and preservation of game birds and game animals of the Commonwealth,” Code § 29.1-109 (emphasis added), it is my belief that the harm the Commonwealth is seeking to prevent is injury to its wildlife through illegal taking, i.e. poaching. See also 4 VAC 15-40-270 (allowing a licensed taxidermist to sell “[unclaimed mounted native wild *161 life specimens or their processed hides, when taken in accordance with the provisions of law and regulations ” (emphasis added)). Clearly the illegal taking in the present case occurred well before the sale and in no way could be considered a result of the subsequent sale.
Although I find that Virginia does not have jurisdiction to prosecute Goble for the sales of the mounted deer heads, it cannot be overlooked that Goble was tried on the theory that he both offered to sell and sold wild animal parts in violation of Code § 29.1-553. This Court has previously recognized that, “[a]n appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason.” Driscoll v. Commonwealth, 14 Va.App. 449, 451-52, 417 S.E.2d 312, 313 (1992). In applying this rationale, this Court is limited to those situations where the correct reason for affirming the trial court was raised at trial and no further factual resolution is needed. Id. at 452, 417 S.E.2d at 313-14. At trial, the Commonwealth specifically argued that Goble both offered to sell and sold the mounted deer heads. Indeed, Goble acknowledges these facts in his brief. Further, it is clear that the trial court found that Goble had both sold and offered to sell the mounted deer heads in violation of Code § 29.1-553. As such, no further factual resolution is needed. Therefore, I find that this Court must examine whether Goble could properly be convicted of offering to sell the mounted deer heads in violation of Code § 29.1-553.
Goble concedes that he was in Virginia when he posted the mounted deer heads on eBay, therefore jurisdiction is not at issue. Rather, Goble argues that Code § 29.1-553 only prohibits offers for sale where the completed sale would be illegal. Specifically, Goble contends that, because the actual sales did not occur in Virginia, he cannot be convicted of the corresponding offers for sale. I disagree.
In Lynch v. Commonwealth, 131 Va. 769, 771, 109 S.E. 418, 419 (1921), our Supreme Court explained that “[t]he offer to sell ... is complete the moment it is made, and in no way depends for its existence upon the present or future ability of *162 the person making the offer to complete the sale in accordance with the offer.” As such, “[a]n offer to sell is one thing. A completed sale is another and different thing.” Id. at 772, 109 S.E. at 419.
The record clearly demonstrates that Goble was in Virginia when he offered the mounted deer heads for sale by posting them on eBay. The crime of offering the mounted deer heads for sale was complete at that moment; that the mounted deer heads were not actually sold in Virginia is thus of no relevance to the determination of the place where the offer for sale occurred. Accordingly, there is sufficient evidence to support Goble’s misdemeanor convictions on the basis that he offered for sale three mounted deer heads in violation of Code § 29.1-553.
Regarding Goble’s felony conviction, however, the sentence enhancement provision found in Code § 29.1-553(A) only applies where “the aggregate of such sales or purchases or any combination thereof, by any person totals $ 200 or more during any 90-day period”; the statute makes no mention of sentence enhancement for “offers for sale” or “offers for purchase.” Accordingly, punishment as a Class 1 misdemean- or is the maximum punishment to be imposed upon conviction of offering wild animals or wild animal parts for sale in violation of Code § 29.1-553(A). Therefore, I would vacate Goble’s felony conviction, and remand the matter to the trial court for re-sentencing as a Class 1 misdemeanor. See Rufty v. Commonwealth, 221 Va. 836, 839, 275 S.E.2d 584, 586 (1981) (vacating the defendant’s sentence and remanding for re-sentencing where trial court erroneously applied a sentence enhancement).