COURT OF APPEALS OF VIRGINIA

Present:    Judges Petty, O'Brien and Senior Judge Frank
Argued by teleconference

PUBLISHED

FRANK BOYD, JR.

                                                  OPINION BY
v.       Record No. 1681-19-1          JUDGE MARY GRACE O'BRIEN
                                                    JULY 14, 2020

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
John W. Brown, Judge

Leslee A. Nicholas, Assistant Public Defender, for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Frank Boyd, Jr. ("appellant") was convicted of felony parental abduction in violation of

Code § 18.2-49.1 after a bench trial.  On appeal, he challenges the sufficiency of the evidence to

support his conviction and contends that the Commonwealth failed to prove that his conduct was

"wrongful," as required by the statute.

BACKGROUND

Appellant and his former wife, Asha Rose, divorced in 2012, after the Court of Common

Pleas in Allegheny County, Pennsylvania entered a custody order concerning their two children in

2011.  The order granted Rose primary physical custody and provided that appellant "shall be able

to execute custody" of the children on the third Saturday and Sunday of each month between

September and June, if he gave Rose one week advance notice.

On Friday, November 3, 2017, the parties' fifteen-year-old son, R.B., and his younger

brother were living with Rose in Chesapeake, Virginia.  R.B. testified that on the preceding evening,

he telephoned his father in Pennsylvania and told him that when he gave his brother chips in the

morning, Rose became angry, "grabbed a switch and [hit him] with it a few times," leaving marks. R.B. also told his father that Rose threw a vacuum cleaner at his chest twice. R.B. photographed the marks on his hand and chest and texted them to appellant, who advised R.B. to tell someone at school about the incident.

When R.B. went to school the following day, he told his guidance counselor, and she alerted Child Protective Services ("CPS"). A CPS social worker interviewed R.B. and his younger brother at school. She also contacted Rose, who advised her "that it was not a case of abuse[,] but a defiant teenager." Rose scheduled an appointment to meet with the social worker the following week, and the abuse allegation was later determined to be unfounded.

Appellant drove to the school from Pennsylvania on November 3 and spoke with the guidance counselor, who informed him that because there were no custody orders on file at the school, he could pick up R.B. However, she did not tell appellant that he could take R.B. back to Pennsylvania.

Appellant left the school with R.B. and took him to a friend's home to stay overnight. When R.B. did not return home from school on Friday, Rose filed a missing person report with the Chesapeake Police Department. After appellant learned of the report, he contacted the police. He did not contact Rose. A police officer came to R.B.'s friend's house and saw R.B. Appellant did not inform the officer that he planned to take R.B. back to Pennsylvania with him.

The next day, on Saturday, November 4, the parties' younger son telephoned appellant, who was in Pennsylvania with R.B. Rose listened to the conversation on speaker phone and recorded it. During the conversation, appellant explained that he drove to Virginia and picked up R.B. from school. Rose testified that she confronted appellant and asked why he did not contact her; appellant started "yelling, hollering, and screaming" at her for physically disciplining R.B, and he "threatened to come to Virginia, and . . . 'F' [her] up."

On Monday, November 6, Rose asked her Pennsylvania attorney to file an emergency motion for special custody relief. Rose testified that two motions were filed on November 13 and November 15. The Pennsylvania court entered an order on November 17, requiring appellant to return R.B. to Rose, which he complied with on November 18. Appellant subsequently was charged with felony parental abduction.

At trial, the court denied appellant's motion to strike the evidence. The court took the matter under advisement at the conclusion of the case and subsequently heard the parties' argument concerning the meaning of the term "wrongful," as used in the statute. The court found that although appellant "was in the right to do what he did initially . . . the course of action should have been with the police that night [by informing them that he didn't] want [R.B.] to be subject to abuse while [the allegations were] being investigated [and he wanted] to take him back to Pennsylvania." Noting that appellant "held [R.B.] out of state for [fifteen] days," the court found him guilty of parental abduction.

ANALYSIS

Appellant challenges the sufficiency of the evidence to support his conviction for parental abduction. In reviewing a challenge to the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the Commonwealth as the prevailing party at trial. Brown v. Commonwealth, 68 Va. App. 44, 55 (2017). We will not reverse the court's decision unless it was "plainly wrong or without evidence to support it." Commonwealth v. Moseley, 293 Va. 455, 463 (2017).

Appellant asserts that "[t]he trial court erred in denying [his] motion to strike, because there was insufficient evidence that [his] conduct was 'wrongful,' as required by [Code § 18.2-49.1(A)]."

Code § 18.2-49.1(A) provides that:

> [a]ny person who knowingly, wrongfully[,] and intentionally withholds a child from either of a child's parents or other legal guardian in a clear and significant violation of a court order respecting the custody or visitation of such child, provided such child is withheld outside of the Commonwealth, is guilty of a Class 6 felony.

We review *de novo* a court's interpretation of a statutory term. Brown v. Commonwealth, 68 Va. App. 746, 792 (2018). "In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain meaning would lead to an absurd result.'" Baker v. Commonwealth, 284 Va. 572, 576 (2012) (quoting Boynton v. Kilgore, 271 Va. 220, 227 (2006)).

Code § 18.2-49.1(A) neither defines "wrongfully" nor refers to any other statute defining the term. "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." Smith v. United States, 508 U.S. 223, 228 (1993). In determining the General Assembly's intent, "[e]ven though any ambiguity or reasonable doubt as to the meaning of a penal statute must be resolved in favor of an accused, nevertheless a defendant is not entitled to benefit from an 'unreasonably restrictive interpretation of the statute.'" Holloman v. Commonwealth, 221 Va. 196, 198 (1980) (quoting Ansell v. Commonwealth, 219 Va. 759, 761 (1979)).

Black's Law Dictionary describes "wrongful" as "[c]haracterized by unfairness or injustice[,] [c]ontrary to law; unlawful[, or] not entitled to the position occupied." Wrongful, Black's Law Dictionary (11th ed. 2019). Similarly, Webster's Dictionary defines "wrongful" as "not rightful especially in law." Webster's Third New International Dictionary 2642 (2002). Code § 18.2-47, the general abduction statute, criminalizes "seiz[ing], tak[ing], transport[ing], detain[ing] or secret[ing]" a person "without legal justification or excuse."

In interpreting Code § 18.2-49.1(A), we stated that "[t]he General Assembly specified that [the statute] applies to any person who withholds a child outside of Virginia from the child's

- 4 -

custodial parent in violation of a . . . court order." Foster-Zahid v. Commonwealth, 23 Va. App. 430, 436 (1996). "The gravamen of the offense is the *withholding* of the child from the custodial parent *outside* the Commonwealth . . . thereby further restricting the custodial parent's ability to retrieve the child." Id. at 437. "The underlying policy for this statute . . . is to deter, if not prevent, child snatching." Id.

Therefore, in construing the term "wrongful" with the General Assembly's intent in enacting the statute, the plain meaning of the term as applied in Code § 18.2-49.1(A) means unlawful or contrary to the law. See Taylor v. Commonwealth, 260 Va. 683, 690 (2000).[1]

Here, we must consider whether the evidence was sufficient to prove that appellant wrongfully withheld R.B. from Rose's lawful custody in violation of a court order. The record established that in 2011, the Court of Common Pleas of Allegheny County, Pennsylvania, entered an order awarding Rose primary custody. Although appellant was permitted to have custody of the children on the third Saturday and Sunday of each month between September and June, the order required appellant to notify Rose if he desired to exercise his custody option. On Friday, November 3, 2017, appellant picked up R.B. from school in Chesapeake, Virginia and drove him to Pennsylvania the next day. November 3 did not fall on the third weekend of the month, and appellant did not contact Rose before taking R.B. from school. He did not, in fact, contact her even after he returned to Pennsylvania with his son. Although appellant asserts that "the threat of harm that could befall his son left [him] with little choice but to protect his son from further harm by

---

[1] This definition is also consistent with the language of similar statutes from other states that prohibit parental abduction. See, e.g., Vt. Stat. Ann. tit. 13, § 2451(a) (2017) (defining the act of "custodial interference" as the "taking, enticing, or keeping [of] a child from the child's lawful custodian, knowingly, without a legal right to do so, when the person is a relative of the child and the child is less than 18 years old"); Strothers v. State, 891 P.2d 214, 228 (1995) (construing Alaska Stat. Ann. § 11.41.330 (West 2014) to require the prosecution to prove that a defendant had "no legal right" to take a child from his or her custodial parent to establish second-degree custodial interference).

removing him from the situation," appellant unilaterally chose to take R.B. out of state. Further, appellant did not advise the school, DSS, or the police officer investigating the missing person report of his plan to take R.B. to Pennsylvania.

Once there, he did not seek an emergency hearing granting him custody of R.B. while the child abuse case was investigated. He kept R.B. in Pennsylvania for fifteen days and did not return him until Rose obtained an order from the Pennsylvania court mandating him to bring R.B. to Virginia. Despite appellant's attempt to justify his actions, the evidence was manifest that he acted in direct contravention of the Allegheny County custody order. Accordingly, the evidence is sufficient to support the court's conclusion that his actions were wrongful, as required by the statute. For these reasons, we affirm his conviction.

<u>Affirmed.</u>