Statement.

# Staunton.

## R. W. RHODES v. COMMONWEALTH.

September 23, 1926.

Absent, Burks, J.

1. EMBEZZLEMENT—*Venue—Jurisdiction—Intent Formed in one County Conversion in Another.*—In a prosecution for embezzlement the venue may and generally must be laid in the county in which the conversion was consummated; but the jurisdiction of such county is not always exclusive. The formation in one county of the fraudulent intent to appropriate the property to one's own use, followed by a conversion of the property, with that intent, in another county, is sufficient to give jurisdiction in the county wherein such intent was formed.

2. EMBEZZLEMENT—*Venue—Jurisdiction—Intent Formed in one State Conversion in Another—Case at Bar.*—The instant case was a prosecution of the president of a corporation for the embezzlement of notes belonging to the corporation. It appeared from the evidence that all the notes and papers belonging to the company were in the custody of the accused in Bristol, Virginia. The notes in question were discounted by the president at a bank in Bristol, Tenn.

  *Held:* That it might be reasonably believed from the evidence that the accused formed an intent to appropriate the notes to his own use while in Virginia and before he reached the State line on his way to the Tennessee bank and this was sufficient to confer jurisdiction upon the corporation court of the city of Bristol.

3. EMBEZZLEMENT—*Prosecution of President of Corporation for Embezzlement—Evidence of other Wrongful Acts of the President not Similar to Embezzlement—Case at Bar.*—In the instant case, a prosecution of the president of a corporation for the embezzlement of notes belonging to the corporation, it was error to admit evidence of false statements by the president to subscribers to the stock of the corporation to induce them to subscribe; of false statements to induce one to endorse notes of the corporation and of other wrongful acts of the president not similar in character to those charged in the indictment.

Error to a judgment of the Corporation Court of the city of Bristol.

*Reversed.*

The opinion states the case.

*Morison, Robertson, Rouse & Flanagan*, for the plaintiff in error.

*John R. Saunders, Attorney General, Lewis H. Machen* and *Leon M. Bazile, Assistant Attorneys General*, for the Commonwealth.

· WEST, J., delivered the opinion of the court.

R. W. Rhodes, the accused, was convicted of the embezzlement of two notes and sentenced to the penitentiary for one year.

In June, 1923, the accused organized the Usavit Packing Company, with its principal office in Bristol, Virginia. He, his attorney and his stenographer were the incorporators, and he was president. He was employed at a commission of ten per cent. to sell the stock of the company. The other officers, the directors and stockholders took practically no part in the management of the company, and it fell to the lot of Rhodes not only to sell most of the stock but to arrange its finances and, after October, 1923, to operate the plant.

For several months, before the plant was put in operation on October 23, 1923, no books were kept and the money received from the sale of stock was deposited in bank in the name of the accused. More than $80,000 worth of stock was issued and sold, for cash and notes.

Acting for the company, Rhodes purchased and took over the plant of the Virginia Packing Company, the latter company agreeing to accept in part payment of the purchase money $25,000 of stock in the Usavit Packing Company.

The company's books and notes receivable were kept

by the accused in its office, or in the Dominion National Bank, in Bristol, Virginia, until such time as Rhodes deemed it wise and proper to have the notes discounted.

In September, 1923, Rhodes discounted at the Union Trust Bank, Bristol, Tennessee, two notes, payable to the order of the Usavit Packing Company, one for five hundred dollars, signed by J. M. Robinson, and the other for two hundred dollars, signed by J. Walter Selfe, which he had accepted in settlement for stock sold them. The notes were endorsed in the name of the company, by him as president, and by him personally. The proceeds were placed to the credit of his personal account, and he drew checks thereon for the payment of his personal obligations as well as obligations of the company. Charged with the embezzlement of these two notes, the accused was convicted.

The accused contends that the court erred—

(1) In admitting certain evidence on behalf of the Commonwealth;

(2) In refusing to exclude certain evidence offered for the Commonwealth;

(3) In taking jurisdiction, when the embezzlement, if any, took place in the State of Tennessee;

(4) In refusing to set aside the verdict "because contrary to the evidence and without evidence to support it."

We will consider first assigment of error No. 3.

[1] It is true that in a prosecution for embezzlement the venue may and generally must be laid in the county in which the conversion was consummated; but the jurisdiction of such county is not always exclusive. The formation in one county of the fraudulent intent to appropriate the property to one's own use, followed by a conversion of the property, with that intent, in another county, is sufficient to give jurisdiction in the county wherein such intent was formed.

[2] It appears from the evidence that all notes and papers belonging to the company were in the custody of the accused in Virginia. As to whether the accused formed an intent to *defraud*, we express no opinion; but it may be reasonably believed from the evidence that the accused formed an intent to appropriate the notes to his own use while in Virginia and before he reached the State line on his way to the Tennessee bank.

In 10 Am. & Eng. Ency. L., page 1025, this is said: "If in that county" (the county in which the property was received) "he conceives the intent to convert the property to his own use, and has possession with such intent, the offense of embezzlement is complete, although he may actually expend or dispose of the money or property in another county."

In Wharton's Criminal Law, Vol. II, section 1287, discussing the place of embezzlement, the author says: "The defendant may be tried in any county where any part of the embezzlement was committed,   *   *   *."

In 9 R. C. L., sec. 39, page 1293, the law is stated thus:  "As a general rule, the accused must be tried in the county where the act of appropriation or conversion took place.   That his prupose was effectuated in another county does not alter the rule where the instrumentalities were set in motion within the jurisdiction of the court   *   *   *.   So, if one is intrusted with property in one county, and there forms the intention of fraudulently appropriating it to his own use, and, pursuant to such intention, goes with it to another county, where he accomplishes his object by pawning it, his crime may be deemed committed in the place where he received the property and formed the criminal intent."

In *Campbell* v. *State*, 35 Ohio St. 70, the defendant was tried in the county in which he had possession of

his employer's money and in which it was his duty to account for the money when called on.    The court held that refusal to account and the removal of the money from the county for the purpose of conversion constituted embezzlement, and that it was no defense to show that he actually expended the money in another county.

This assignment is without merit.

The first and second assignments of error will be considered together.

[3] Bills of exception Nos. 2 and 4 relate to evidence introduced by the Commonwealth to show that Rhodes as president of the company sent a dividend check for ninety-two dollars to stockholder Joe Campbell, when no dividend had been declared by the company, and the company was not in a financial condition to pay a dividend.

Bill of exception No. 3 involves the action of the court in permitting the Commonwealth to prove that Rhodes sold Joe Campbell five shares of stock in the company and received therefor his note for $250 and five shares of the stock of the Russell County Bank worth $500, and agreed to pay back $200 of the money to Campbell within thirty days, but had failed to pay the same.

Bills of exception Nos. 5 and 9 cover the exceptions of the accused to the action of the court in allowing the Commonwealth to prove by witness W. E. Wynn that Rhodes showed him the plant of the company, stated that the assets of the company amounted to $125,000, and told him everything was moving on successfully; that the Union Trust Bank was to be trustee for the preferred stock of the company and handle the funds for that purpose; that upon Rhodes' representations of the condition of the company, which were false, he purchased ten shares of the preferred stock on April 26, 1924, for $950.

Bill of exception No. 6 relates to the evidence of W. E. Wynn, detailing the circumstances under which Rhodes induced him to endorse a certain note of the company for $10,000 by telling him they needed the money in the business; that the note was secured by a deed of trust on the unsold stock, and would be liquidated through the Union Trust Bank, trustee, which was not done.

Bill of exception No. 7 relates to the action of the court in allowing the Commonwealth's witness, J. H. Reynolds, to testify that he purchased $1,000 worth of stock in the company through Rhodes; that, as an inducement to purchase this stock, Rhodes told him he would put up $1,000 of his own stock as security; and that he would sell $50,000 of the stock of the company which would give them enough money to enable the company to operate successfully.

Bill of exception No. 8 relates to accused's objection to the evidence of the Commonwealth's witness, O. K. Booher, wherein he testified that just after the stockholders' meeting, at which the question of a receivership was discussed, Rhodes told him the company could make some money "if somebody didn't act the fool" by putting the company in the hands of a receiver; that witness told accused his balance sheet showed the company was insolvent and that he could borrow no money at the bank, and accused said: "To hell with the bank; do business with the farmers," who don't know anything about a balance sheet.

The trial court admitted the evidence complained of on the assumption that it would tend to show the intent with which the accused did the acts which it is contended constituted the embezzlement.

It is true that in cases of embezzlement and other offenses of which intent or guilty knowledge is a necessary ingredient, it is permissible to prove other acts and

declarations of the accused, provided *such acts and declarations* be of *a similar character* and tend to show such intent or knowledge.

In *Trogden's Case*, 31 Gratt. (72 Va.) 870, where the indictment was for obtaining goods under false pretenses, Judge Staples said: "For example, in prosecutions for uttering forged notes, for passing counterfeit money, and for receiving stolen goods, evidence is always admissible of other transactions of a *like character*, although they may amount to distinct felonies." And at page 871 he says: "In short, whenever the intent or guilty knowledge of a party is a material ingredient in the issue of the case, there collateral parts—that is, other acts and declarations of a *similar characier* tending to establish such intent or knowledge—are proper evidence." (Italics ours.)

In the *Seymour Case*, 133 Va. 775, 112 S. E. 806, the accused was jointly indicted with two others for murder, which the evidence showed arose out of an attempted robbery. This court overruled the contention that the court erred in permitting testimony as to recent previous robberies of ships by the defendants, acting together. At page 786, Judge Prentis, speaking for the court says: "The court carefully followed the ruling of this court made so long ago as *Trogden* v. *Commonwealth*, 31 Gratt. (72 Va.) 862, and told the jury that they could only consider this testimony in connection with and as explanatory of intent, purpose and plan of the accused on the night of December 24, 1920, at the time the crime here charged was committed, and that they could not consider it as proof that the accused or any of them had committed other offenses not charged in the indictment."

In Virginia, murder in the commission of, or attempt to commit, robbery is murder in the first degree. Sey-

mour and his companions killed the deceased in an attempt to rob the ship of liquor.  The court simply permitted evidence of the previous robberies of other ships as tending to show the intent of the accused on the night of the homicide.  The acts proven were *similar in character* to those charged in the indictment and hence properly admitted.

The fact that Rhodes may have made false statements to witnesses Wynn and Campbell in order to induce them to buy stock in the Usavit Packing Company; or the fact that the accused sent witness Campbell•a dividend check on his stock, when no dividend had been declared, or that he induced Booher and other stockholders to endorse a note for $10,000, which they had to pay, or the fact that he told Booher they could secure money from farmers who knew nothing about balance sheets, could not in any way aid the jury in determining the motive or intent with which the accused discounted and converted to his own use the notes in question.  The evidence was immaterial and irrelevant and should not have been admitted.  It could, in view of the nature of the charge, serve only to mislead and prejudice the jury against the accused.  The acts proven were not similar in character to those charged in the indictment, and could not be admitted under the similar acts doctrine.

For the court's error in permitting this evidence to go to the jury, the judgment will be reversed, the verdict set aside and the case remanded for a new trial not in conflict with the views herein expressed.

*Reversed.*