# CIRCUIT COURT OF BUCHANAN COUNTY

Commonwealth of Virginia

    v.

John Douglas Napier

        Case Nos. 877-15 through 896-15

Commonwealth of Virginia

    v.

Eloise Louise Napier

        Case Nos. 79-16 through 98-16

        June 20, 2016

BY JUDGE PATRICK R. JOHNSON

The above-styled case is now before the Court following Defendants' Motion Objecting to Venue and Defendants' Motion for a Bill of Particulars. The parties convened for an evidentiary hearing on April 28, 2016, where Defendants' counsel made an oral argument in support of their motions. Mr. Compton, Senior Assistant Commonwealth's Attorney, presented a rebuttal argument. Both parties in attendance asked the Court to consider the memoranda they had previously submitted in support and in opposition to these motions. After thorough review of the court file, submitted briefs, evidence, and oral arguments presented at this hearing, the Court now makes the following ruling.

## I. *Factual Background*

The alleged facts and evidence viewed in the light most favorable to the Commonwealth, are as follows. John Douglas Napier and Eloise Louise Napier (hereinafter "Defendants") are married and reside in Warren,

Michigan. On approximately nineteen separate occasions, between October 2012 and June 2015, one or both of the Defendants conducted a financial transaction where the alleged property involved in the transaction represented the proceeds of an illegal drug sale. Specifically, on a number of occasions, one of Defendants purportedly met Reda Deel in either Michigan or Ohio. At these meetings Defendants allegedly sold Deel marijuana, and Deel transported this marijuana into Buchanan County where it was sold by her and others. The Commonwealth further contends, once Deel returned to Buchanan County, she wrote multiples checks from various Grundy National Bank accounts payable to J & E Construction. The Commonwealth alleges that J & E Construction is wholly owned and operated by Defendants, as evidenced by the fact that the letters J & E correspond to the starting letter of each Defendant's first name. Deel supposedly sent these checks, via mail, to Defendants in Michigan. Upon receiving the checks, the Commonwealth declares, Defendants deposited the cheeks into accounts maintained for J & E Construction. As a result of these allegations, the Commonwealth indicted both Defendants for nineteen counts of money laundering and one count of conspiracy to commit money laundering.

The Court notes that the Commonwealth did not indict either Defendant for drug distribution or conspiracy to distribute drugs in Buchanan County. Further, the criminal complaint regarding the conspiracy to commit money laundering states that "Eloise Napier conspired with her husband," and fails to make any allegation that the money laundering conspiracy included Deel.

The Commonwealth contends that Defendants sold marijuana directly to a Virginia resident with full knowledge that this product would he marketed in Virginia; therefore, the immediate result of Defendants' conduct occurred in Virginia. As such, the Commonwealth opines, venue is proper in Buchanan County. Further, the Commonwealth alleges, Deel transferred, via check drawn on an account based in Buchanan County, money derived from ill-gotten gains, and, once received, Defendants deposited the check into their corporate account knowing that the money represented proceeds of an activity that is punishable as a felony. Consequently, the Commonwealth concludes, since the funds laundered originated in Buchanan County, venue for money laundering is proper in Buchanan County. Opposing, Defendants contend that the alleged financial transactions occurred wholly in another jurisdiction; therefore, the Court lacks any jurisdiction to hear these cases.

## II. *Legal Analysis*

Defendants argue that their indictments for violation of Va. Code § 18.2-246.3 should be dismissed because the evidence establishes that they never undertook any action relating to money laundering in Virginia, much less Buchanan County. The general venue statute provides for prosecution of a crime in the county or city in which the crime was committed, except as otherwise provided by law. Va. Code § 19.2-244. Application of this statute

requires a determination of where a specific crime was "committed." To prove venue, the Commonwealth must produce evidence sufficient to give rise to a "strong presumption" that the offense was committed within the jurisdiction of the court, and this may be accomplished by either direct or circumstantial evidence. *Pollard v. Commonwealth*, 220 Va. 723, 725, 261 S.E.2d 328, 330 (1980); *Keesee v. Commonwealth*, 216 Va. 174, 175, 217 S.E.2d 808, 809-10 (1975). This determination is straightforward when the crime is a discrete act. For example, the distribution of marijuana to a juvenile in violation of Va. Code § 18.2-255(A)(i) is a discrete act which, when completed, constitutes the commission of the crime. *Moreno v. Baskerville*, 249 Va. 16, 18-19, 452 S.E.2d 653, 655 (1995).

The crime at issue here is a violation of Va. Code § 18.2-246.3. That section makes it a crime for any person knowingly to conduct a financial transaction where the person knows the property involved in the transaction represents the proceeds of an activity that is punishable as a felony under the laws of the Commonwealth, another state, or a territory of the United States. The Code further defines conduct, to include "initiating, concluding, participating in, or assisting in a financial transaction;" financial transaction to mean "any purchase, sale, trade, loan, pledge, investment, gift, transfer, transmission, transportation, delivery, deposit, withdrawal, payment, transfer between accounts, exchange of currency, extension of credit, purchase or sale of monetary instruments, use of a safe-deposit box, or any other acquisition or disposition of monetary instruments by any means including the movement of funds by wire or other electronic means, which is knowingly designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the property involved in the transaction;" and proceed to mean "property acquired or derived, directly or indirectly, from, produced through, realized through, or caused by an act or omission and includes property, real or personal, of any kind." Va. Code Ann. § 18.2-246.2.

The Virginia Supreme Court has previously addressed the issue of venue for prosecution of other crimes in which actions involving the commission of the crime occur in different places, in the absence of a special venue statute.

(Although the General Assembly has enacted a number of statutes providing special venue provisions for crimes which may involve acts performed in more than one jurisdiction, no such statute exists for a violation of Va. Code § 18.2-246.3. See *e.g.,* Va. Code § 18.2-198.1 (offenses relating to credit cards, such as theft, forgery, fraud, and unauthorized possession); Va. Code § 18.2-186.3(D) (identity theft); Va. Code § 18.2-178(B) (obtaining money or signatures by false pretenses); Va. Code § 18.2-46.8 (terrorism offenses); Va. Code § 18.2-46 (crimes by mobs); and Va. Code § 18.2-212(B) (summoning ambulance or fire-fighting apparatus without just cause).)

In doing so, the Court has looked to the nature of the crime charged and the location of the acts constituting the crime. For example, in considering the proper venue for the crime of embezzlement, the Court acknowledged that, although venue was generally appropriate in the jurisdiction in which the conversion was consummated, such venue was not exclusive and the crime also could be prosecuted in the jurisdiction in which the perpetrator formed the intent to appropriate the goods to his own use. *Rhodes v. Commonwealth*, 145 Va. 893, 895, 134 S.E. 723, 724 (1926). Similarly, the Court held that venue is proper in the jurisdiction where the direct and immediate result of an illegal act occurred, even if the illegal act causing the injury occurred in another jurisdiction. *Gregory v. Commonwealth*, 237 Va. 354, 355, 377 S.E.2d 405, 406 (1989). See also *United States v. Blecker*, 657 F.2d 629, 632 (4th Cir. 1981) (when a statute defining substantive offense does not indicate where the place of committing the crime is to be, the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it.)

The Commonwealth relies heavily on the aforementioned results theory, which holds that physical presence in a state is not necessary to create criminal jurisdiction over an act "if the crime is the immediate result of the accused's act; under such circumstances, the accused may be tried in the state's courts even though actually absent at the time the act was committed." *Moreno v. Baskerville*, 249 Va. 16, 452 S.E.2d 653, 655 (1995) (internal quotation marks omitted).

For applications of the results theory, see *Jaynes v. Commonwealth*, 276 Va. 443, 666 S.E.2d 303 (2008) (sending bulk email with false routing information from North Carolina results in illegal use of a Virginia-based email provider's computer network); *Travelers Health Ass'n v. Commonwealth*, 188 Va. 188, at 892, 51 S.E.2d at 269 (1949) (selling insurance without the required permits results in economic loss in Virginia); *Foster-Zahid v. Commonwealth*, 23 Va. App. 430, 477 S.E.2d 759 (1996) (child withheld outside Virginia results in harm to relationship with father in Virginia); *Gregory v. Commonwealth*, 5 Va. App. 89, 360 S.E.2d 858 (illegal conversion of property outside of Virginia results in economic injury in Virginia).

However, this exception to the general rule that "every crime to be punished in Virginia must be committed in Virginia," *Farewell v. Commonwealth*, 167 Va. 475, 189 S.E. 321, 323 (1937), is not without its limits. In *Moreno v. Baskerville*, the defendant, Moreno, sold marijuana in Arizona to Moore, whom he knew would distribute the marijuana to his associates for sale in Virginia. *Moreno*, 452 S.E.2d. at 654. The Virginia Supreme Court held Moreno's resulting conviction for distribution of marijuana invalid on the grounds that, despite Moreno's knowledge that the drugs would be resold in Virginia, their resale was not the "immediate result" of the distribution of drugs in Arizona. *Id.* at 655. Instead, Moore's

distribution of the marijuana to his associates in Virginia intervened, so that the situation was "entirely unlike a case in which a shot fired across a state line 'immediately' results in harm, thus enabling the forum state to exercise extraterritorial jurisdiction over the assailant." *Id.* The crux of the results theory is that if the "harm [was] caused in Virginia by [defendant's] criminal acts partially committed within [the] Commonwealth" then, under the immediate result doctrine, "such acts can be prosecuted here." *Gregory v. Commonwealth,* 5 Va. App. 89, 94 360 S.E.2d 858, 861 (1987).

Thus, the Court must first address where the harm from the alleged money laundering occurs, and if key elements in the prosecution for money laundering are the immediate cause of harm that the Commonwealth seeks to punish. See *Moreno,* 249 Va. at 19, 452 S.E.2d at 655. The Commonwealth posits that the sale of marijuana to Buchanan County residents is the immediate result of Defendants' actions in laundering money in Michigan. The Commonwealth is mistaken.

To successfully prosecute a crime under § 18.2-246.3, the Commonwealth must establish all the elements of that crime. One such element is that Defendant must know that the property involved in the transaction represents the proceeds of an activity that is punishable as a felony under the laws of the Commonwealth. The Commonwealth theorizes that the first crime, drug distribution, a crime for which Defendants are not charged, is an essential element of the second and that the second facilitated the first or made it profitable by impeding its detection.

Undoubtedly, the Commonwealth cannot bring drug distribution charges against Defendants in Virginia because the several alleged crimes of distribution of drugs by Defendants to Deel were discrete offenses, completed in Ohio or Michigan. In Virginia, "distribute," as proscribed in Va. Code §§ 18.2-248 and 18.2-248.1, means "to deliver other than by administering or dispensing a controlled substance." Va. Code § 54.1-3401. "Deliver" means "the actual, constructive, or attempted transfer" of any controlled substance, "whether or not there exists an agency relationship," from one person to another. *Id.*; *Wood v. Commonwealth,* 214 Va. 97, 99, 197 S.E.2d 200, 202, appeal dismissed, 414 U.S. 1035, 38 L. Ed. 2d 326, 94 S. Ct. 533 (1973). Ultimate receipt of payment for the distribution is not an element of the offense.

But the question here is the place appropriate to try the "after the fact" actor; it is immaterial whether that actor knew where the first crime was committed. The money launderer only must know that he or she is dealing with funds derived from "an activity which is punishable as a felony," here, drug distribution. The Virginia venue of that activity is "of no moment" because there is no evidence that Defendants ever set foot in Virginia or were ever engaged in a conspiracy to commit money laundering in Virginia. To this point, the Court notes that both Defendants are charged with conspiracy to commit money laundering; however, the criminal complaint

alleges that they only conspired with each other and not Deel. Thus, the sale of drugs in Buchanan County by Deel and others was not the "immediate result" of the money laundering committed in Michigan.

In fact, the only acts that formed the basis for the money-laundering charges in the instant case consisted of banking transactions, which Defendants executed only in Michigan. The only incident that could conceivably confer jurisdiction to this Court is the fact that the deposited checks originated from a bank account located in Buchanan County. In writing those checks, Deel was the sole actor, and there are no allegations that Defendants' engaged in any action in the Commonwealth that would confer venue upon this Court. As a result, the Court declines to extend the venue statute so as to allow for a prosecution of an out of state actor's indirect assimilation with the Commonwealth.

Moreover, the immediate result of Defendants' alleged money laundering is economic harm to financial institutions in Michigan and potential loss of tax revenue for the state of Michigan, not the harm associated with the alleged drug distribution in Virginia. This is because the harm associated with drug distribution is merely ancillary to the harm associated with money laundering. Consequently, Michigan is where the direct and immediate result of the alleged illegal acts occurred. Additionally, the Commonwealth is incorrect in its assertion that, if the Court declines to exercise jurisdiction, Defendants could not he prosecuted anywhere, as Michigan Code § 750.411k makes it a crime to launder money.

Lastly, the Court's decision is bolstered by a recent United States Supreme Court case presenting facts nearly identical to the current case. In that case, a defendant made a series of bank deposits and withdrawals in Florida of money that was traceable to illegal cocaine sales in Missouri. Defendant was indicted on two counts of money laundering and one count of conspiring to launder money in the Western District of Missouri because, as the government asserted, the drug conspiracy operated in Missouri and Defendant was "laundering" its profits. *United States v. Cabrales*, 524 U.S. 1, 4, 118 S. Ct. 1772, 141 L. Ed. 2d 1 (1998). The Supreme Court, in a unanimous decision, affirmed the dismissal of Defendant's charges, ruling that, because Defendant was indicted "for transactions which began, continued, and were completed in Florida . . . venue in Missouri is improper." *Id.* at 5-6. The Supreme Court announced the criteria, under the Constitution, for determining proper venue by stating "the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *Id.* at 6-7 (quoting *United States v. Anderson*, 328 U.S. 699, 703, 66 S. Ct. 1213, 90 L. Ed. 1529 (1946)). Recognizing that some crimes may constitute "continuing offenses," the Supreme Court applied its venue criteria to conclude the money laundering statutes "interdict only the financial transactions (acts located entirely in

Florida), not the anterior criminal conduct that yielded the funds allegedly laundered." *Id.* at 7.

Following *Cabrales*, Congress amended the money laundering statute such that venue is proper in a district where the underlying criminal conduct occurred as well as where the financial transactions took place. Thus, Congress passed a special statute addressing venue in money laundering cases. Virginia has yet to create such a statute; therefore, the general venue provisions still apply.

As such, Michigan is the proper venue for the prosecution of Defendants' alleged money laundering; therefore, the Court grants Defendants' Objection to Venue and dismisses all charges against both Defendants.

### III. *Bill of Particulars*

Defendants' motion for a bill of particulars is rendered moot by the Court's decision regarding venue; therefore, the Court declines to address the merits of Defendants' motion for a bill of particulars.

### IV. *Conclusion*

For the aforementioned reasons, the Court grants Defendants' Objection to Venue and dismisses the charges against both Defendants.