COURT OF APPEALS OF VIRGINIA

Present:   Judges Fulton, Friedman and Raphael
Argued at Lexington, Virginia

RICHARD ALAN SWEZEY

                                                    OPINION BY
v.        Record No. 0490-22-3              JUDGE STUART A. RAPHAEL
                                                    JUNE 13, 2023

COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                          John T. Cook, Judge

        Matthew L. Pack (M. Pack Law, PLLC, on brief), for appellant.

        Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
        Attorney General, on brief), for appellee.


        Following a jury trial, the trial court convicted Richard Alan Swezey of statutory burglary,

abduction, using a firearm in the commission of a felony, assault, and two counts of brandishing a

firearm. Swezey claims that the trial court abused its discretion in refusing to strike the abduction

charge, arguing that his detention of the victim was incidental to the assault and to one of the

brandishing offenses. We find, however, that the detention was not incidental to those offenses

because those crimes were completed before Swezey detained the victim. And Swezey forfeited his

other argument that the trial court denied him due process at sentencing by penalizing him for

electing a jury trial. We thus affirm the judgment, but we remand the case to the trial court to

correct a clerical error in the sentencing order.

                                        BACKGROUND

        On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard"

the defendant's evidence when it conflicts with Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

After 29 years of marriage, Swezey and his wife, C.S. ("wife"), separated in May 2019, and wife moved to Campbell County. They had no contact for nine months. But in March 2020, wife emailed Swezey that she wanted a divorce. She filed for divorce that September.

On November 6, 2020, wife and her co-worker, M.G., went to wife's townhouse, as M.G. was interested in buying some of wife's furniture. After entering her home and greeting her two dogs, wife turned to see Swezey standing in the foyer. Wife was shocked to see him, as he appeared unannounced and uninvited. Swezey looked angry as he said, "[W]e need to talk." But wife refused to speak with him alone and asked M.G. to go outside with her. Outside, wife asked M.G. not to leave her alone with Swezey. M.G. agreed, and the two women went back inside.

After wife mentioned her sale of furniture to M.G., Swezey offered to put the items in M.G.'s van if M.G. would then leave, but M.G. refused. Wife then agreed to talk to Swezey in the kitchen. M.G. stayed in the living room as wife and Swezey moved to the kitchen. Swezey repeated his demand to talk to wife alone; wife refused and suggested inviting over Swezey's brother. Swezey then accused wife of taking everything from him, including his children and his money. He repeated that M.G. needed to leave so they could talk alone; wife again refused.

Swezey then pulled out a handgun and pointed it at wife. When wife asked if he was there to kill her, he nodded slowly and said "yes, but I'm not going to go down for this." Wife ran around the kitchen table and tried to open the back sliding door, but she fumbled with the handle and could not escape. Unable to get away, she dropped to the floor. Swezey then stood

- 2 -

over her, pointing the gun to her head; wife screamed and pleaded with him not to kill her. Wife was in shock and believed she was going to die.

Hearing wife's screams, M.G. entered the kitchen. M.G. saw Swezey holding wife down with one hand while pointing the gun to her head with the other. M.G. called 911 and told Swezey "to get off" wife. Swezey then pointed the gun at her, ordering that she end the 911 call and leave. As Swezey lowered his gun, saying that he just wanted to talk, M.G. ran out the front door, remaining on the call with the 911 operator.

Hoping to persuade Swezey to leave, wife slowly stood up, saying she would talk to him. Swezey then locked the front door. Wife said she would speak with him if he handed her the gun. Swezey gave her the magazine but retained the gun itself. When Swezey repeated that he was "not going to go to jail for this," wife promised to send the police away if they arrived. She went outside to tell M.G. that everything was "fine." Wife also told the police on M.G.'s phone that she did not need their help. She then went back inside.

Returning to the kitchen, Wife found Swezey scrolling through her phone. He made her repeat her promise to send the police away if they arrived. But then wife's neighbor, who was a police officer, knocked on the front door. When wife opened the door, the neighbor said he heard that something was going on and that a gun was involved. Wife told him that everything was "fine" and that she had the gun's magazine in her pocket. But the neighbor noticed that wife was shaking and nervous, and he refused to let her go back inside. The police arrived soon after and arrested Swezey.

When the officers discovered a bullet in Swezey's left-front pocket, he responded, "Oh shit, that must have been the one in the chamber." About ten days later, wife found another magazine for Swezey's pistol hidden under a mattress in an upstairs bedroom.[1]

Swezey testified at trial that he was surprised by wife's decision to divorce him. He said that he went to her home to discuss private matters and offer financial support and that he brought the gun because he was carrying a lot of cash. Swezey said he regretted pointing the gun but did so out of frustration with wife's refusals to be alone with him. He claimed that after wife dropped to the floor, he reached down to help her up. He denied pointing the gun at M.G. when she entered the kitchen.

The jury found Swezey guilty of statutory burglary, abduction, assault, using a firearm in the commission of a felony, and two counts of brandishing a firearm (one for wife and the other for M.G.). At his sentencing hearing, Swezey requested that the court "check the box" on the sentencing-guidelines form to reduce the low end of the guidelines because he had expressed remorse. The court commented that "when you plead not guilty and you go through a full jury trial, I just can't check the box that he accepted responsibility." The court sentenced Swezey to 33 years and 36 months of incarceration, with 27 years and 36 months suspended. This appeal followed.

ANALYSIS

A. *Swezey's detention of wife was not incidental to the assault and brandishing offenses.*

Swezey first argues that the trial court should have dismissed the abduction charge because wife's detention was incidental to his crimes of brandishing a gun and assaulting her. When a defendant is "accused of abduction by detention and another crime involving restraint of

---

[1] Swezey admitted at trial that when wife walked outside, he went to the bedroom and put the spare magazine under the mattress.

the victim, both growing out of a continuing course of conduct," the defendant may be convicted of "separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime." *Brown v. Commonwealth*, 230 Va. 310, 314 (1985). "[W]hether the detention established by the evidence is 'the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault,' is a question of law to be determined by the court." *Lawlor v. Commonwealth*, 285 Va. 187, 229 (2013) (quoting *Brown*, 230 Va. at 314).

Swezey claims that the trial court should have analyzed this issue by applying the "four factors" set out in *Hoyt v. Commonwealth*, 44 Va. App. 489, 494 (2004).

> Those factors are: (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

*Id*. (quoting *Government of Virgin Islands v. Berry*, 604 F.2d 221, 227 (3d Cir. 1979)).

*Hoyt*'s four-factor test, however, is in tension with the Supreme Court's later decision in *Lawlor*, which "express[ed] no opinion on the *Hoyt* factors." *Lawlor*, 285 Va. at 227 n.14. The Court there declined to apply *Hoyt*'s four-factor test to decide whether the victim's abduction was incidental to her murder and rape. The Court "disagree[d] that *Hoyt*" applied. *Id.* at 225. It instead reduced the inquiry to a single question: "The *only* issue when abduction is charged alongside an offense for which detention is an intrinsic element is whether any detention exceeded the minimum necessary to complete the required elements of the other offense." *Id.* (emphasis added).

Since then, our jurisprudence has reflected the tension between *Lawlor* and *Hoyt*. In one published decision, we cited only *Lawlor*'s test, without mentioning *Hoyt*'s four factors. *See*

*Epps v. Commonwealth*, 66 Va. App. 393, 403 (2016), *aff'd on other grounds*, 293 Va. 403

(2017). In another, we cited both tests and said that *Lawlor* did not overrule *Hoyt*, but we did not

systematically apply the *Hoyt* factors in concluding that the abduction there "was not merely

incidental to the" appellant's other crimes. *See Vay v. Commonwealth*, 67 Va. App. 236, 251

(2017). Our subsequent unpublished[2] opinions have sometimes added, after citing the *Lawlor*

test, that "[i]n making this determination, [the] four factors [from *Hoyt*] are relevant." *Garay-*

*Amaya v. Commonwealth*, No. 0417-22-4, slip op. at 7, 2023 WL 2655500, at \*4 (Va. Ct. App.

Mar. 28, 2023); *Raven v. Commonwealth*, No. 1108-21-1, slip op. at 6, 2022 WL 3588377, at \*3

(Va. Ct. App. Aug. 23, 2022) ("relevant"). Sometimes we have cited both tests but noted that

"the central question" is the one presented by *Lawlor*. *Holmes v. Commonwealth*, No.

0951-21-2, slip op. at 8, 2022 WL 2026807, at \*4 (Va. Ct. App. June 7, 2022); *Conyers v.*

*Commonwealth*, No. 1635-15-2, slip op. at 8 n.2, 2016 WL 7364797, at \*4 n.2 (Va. Ct. App.

Dec. 20, 2016) (noting that the *Hoyt* "factors are essentially guideposts in addressing the ultimate

issue" under *Lawlor*). Other times we have noted the tension more explicitly. *See Montgomery*

*v. Commonwealth*, No. 1283-21-1, slip op. at 7, 2022 WL 4073444, at \*4 (Va. Ct. App. Sept. 6,

2022) (citing *Lawlor*'s "only issue" test and noting that *Lawlor* "declin[ed] to apply the four-

factor test outlined in *Hoyt* to determine this issue").[3]

These rulings can be harmonized. Our jurisprudence reflects that when a court

determines whether the detention at issue is an intrinsic element of another crime, the *Lawlor* test

is mandatory and consideration of the *Hoyt* factors is permissive. Under *Lawlor*, we must

---

[2] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value. Rule 5A:1(f)." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012).

[3] We have also paraphrased the four factors without mentioning their origin in *Hoyt*. *E.g.*, *Lydon v. Commonwealth*, No. 1436-18-4, slip op. at 4, 2020 WL 4110660, at \*2 (Va. Ct. App. July 21, 2020) (paraphrasing the four factors stated in *Wiggins v. Commonwealth*, 47 Va. App. 173, 183 (2005), which simply quoted *Hoyt*, 44 Va. App. at 494).

determine "whether any detention exceeded the minimum necessary to complete the required elements of the other offense." 285 Va. at 225. But because *Lawlor* did not overrule *Hoyt*, the *Hoyt* factors may be considered when helpful.

Applying that analysis here, we reject Swezey's claim that detaining his wife on the floor while pointing a loaded gun to her head was intrinsic in the crimes of brandishing and assault. Swezey's counsel acknowledged at oral argument that Swezey's detention of wife was separate and apart from his earlier act of brandishing the pistol. After Swezey pulled out his gun and pointed it at her, wife tried unsuccessfully to escape. Only afterward did she drop to the floor where she was detained at gunpoint. We therefore need consider only whether Swezey's detention of wife was incidental to the crime of assaulting her.

Swezey's argument that detaining his wife was inherent in the assault stumbles at the outset on a discrepancy in the sentencing order that will require correction on remand. The original charge below was for misdemeanor assault and battery of a family member under Code § 18.2-57.2. Without objection, the prosecutor amended that charge at trial to simple assault under Code § 18.2-57. The jury was instructed on simple assault and found Swezey guilty of that offense.[4] The sentencing order, however, erroneously said that Swezey was found guilty of assault on a family member under Code § 18.2-57.2. The Commonwealth agreed at oral argument here that the sentencing order requires correction on remand. *See* Code § 8.01-428(B).

---

[4] Common-law assault "occurs when an assailant engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm *or* engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim." *Carter v. Commonwealth*, 269 Va. 44, 47 (2005). Consistent with that understanding, the jury here was instructed "that an assault is an overt act intended to place a person in fear or apprehension of bodily harm that creates such a reasonable fear or apprehension in that person." *Accord* Model Jury Instrs.—Crim. No. 37-350.

Yet Swezey briefed this assignment of error as if the conviction had been for assault and *battery* on a family member, rather than simple assault. Since Swezey battered wife by holding her down on the floor, he argued on brief, the battery was intrinsic to the abduction.

Refocusing instead on simple assault as the relevant offense, the evidence in this case proved an assault that was "separate and apart" from the abduction. *Lawlor*, 285 Va. at 225-26. A person commits an assault when "he 'menacingly points at another with a gun, apparently loaded,'" if "a well-founded apprehension was created." *Carter v. Commonwealth*, 269 Va. 44, 47 (2005) (quoting *Lynch v. Commonwealth*, 131 Va. 769, 774 (1921)). That is what happened here. Swezey pulled out his gun, pointed it at wife, and told her "yes" when she asked if he was going to kill her. Wife was terrified and believed she was about to die. The assault was thereby complete. It was only after that when, unable to escape through the door, wife dropped to the floor and was detained there by Swezey. Swezey's restraint of wife therefore "exceeded the minimum necessary to complete the required elements of the other offense," *Lawlor*, 285 Va. at 225—the assault—thus establishing the separate crime of abduction.[5]

Applying the *Hoyt* factors would lead to the same conclusion. The detention occurred after the assault, not "during" it (factor two); the detention was not "inherent in" the earlier assault (factor three); and the detention at gunpoint surely "created a significant danger to the victim independent of that posed by" the earlier assault (factor four). *Hoyt*, 44 Va. App. at 494. The remaining factor—the "duration of the detention" (factor one), *id.*—does not salvage

---

[5] A person is guilty of abduction if he, "by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty . . . ." Code § 18.2-47(A). Swezey does not contest that he detained wife. *Accord Walker v. Commonwealth*, 74 Va. App. 475, 491-92 (2022) (holding that evidence sufficed to establish abduction because the defendant's actions "caused [victim] to go to the ground and remain there for the duration of the bank robbery"), *aff'd on other grounds*, ___ Va. ___ (June 1, 2023).

Swezey's argument. True, the detention was short. But it lasted long enough to keep terrorizing wife and to coerce her into agreeing to speak with Swezey alone.

In sum, we find as a matter of law that Swezey's assault on wife and his brandishing of the pistol were separate and apart from—not incidental to—her later abduction.

### B. Swezey failed to preserve his sentencing argument.

At sentencing, Swezey requested that the trial court "check the box" on the sentencing-guidelines form to reduce the low end of the guidelines to credit him for expressing remorse. The trial court declined to do so because Swezey had pleaded not guilty and sought a jury trial. Swezey argues on appeal that the court denied him due process by allegedly penalizing him for electing to be tried by a jury.

Because Swezey failed to raise that claim below, however, he has forfeited it here. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). If a party fails to timely and specifically object, he waives his argument on appeal. *Arrington v. Commonwealth*, 53 Va. App. 635, 641-42 (2009); *Crawford v. Commonwealth*, 35 Va. App. 438, 439 (2001). Because Swezey did not raise his due-process argument below, we do not consider it here.[6]

---

[6] Swezey does not invoke the good-cause or ends-of-justice exceptions to Rule 5A:18, and the Court will not apply those exceptions sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc).

CONCLUSION

We find no error in the trial court's refusal to strike the abduction charge or in its exercise of sentencing judgment. We affirm the trial court's rulings but remand this case for the trial court to correct the clerical error in the sentencing order, changing the conviction for misdemeanor assault on a family member under Code § 18.2-57.2 (CR21000201-03) to misdemeanor assault under Code § 18.2-57.

*Affirmed and remanded.*